UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

v.

ONE SILICON VALLEY BANK ACCOUNT,
3300355711, IN THE AMOUNT OF ONE
HUNDRED THIRTEEN THOUSAND NINE
HUNDRED FIFTY-TWO and 62/100
DOLLARS ($113,952.62),

        Defendant.

_____/

File No.  1:05-CV-295

HON. ROBERT HOLMES BELL


UNITED STATES OF AMERICA,

        Plaintiff,

v.

KRISTA L. KOTLARZ WATSON, a/k/a
      "Kris Kotlarz," and
PAUL NATHAN WRIGHT, a/k/a
      "Jacob Might,"
      "P. Nathan Wright,"
      "Nate Wright,"

        Defendants.

_____/

File. No. 1:06-CR-290

HON. ROBERT HOLMES BELL


**O P I N I O N**

On December 10, 2007, the Court consolidated the ancillary criminal forfeiture proceeding in *United States v. Krista L. Kotlarz Watson, et al.*, File No. 1:06-CR-290, with the civil forfeiture proceeding *United States v. One Silicon Valley Bank Account, 3300355711, in the amount of one hundred thirteen thousand nine hundred fifty-two and 62/100 dollars ($113,952.62)* ("*United States v. One Silicon Valley Bank Account, 3300355711*"), File No. 1:05-CV-295.  (File No. 1:05-CV-295, Dkt. No. 91, 12/10/2007 Mem. Op.;  File No. 1:06-CR-290, Dkt. No. 112, 12/10/2007 Mem. Op.)  On January 10, 2008, the Court held a hearing in this consolidated proceeding.  The January 10 hearing encompassed the ancillary proceeding required by 21 U.S.C. § 853(n)(4-6) and Federal Rule of Criminal Procedure 32.2(c)(1) in *United States v. Watson*, at which the Court heard from the petitioners in the ancillary criminal proceeding.  At the January 10 hearing the Court also heard argument on the two motions filed in *United States v. One Silicon Valley Bank Account, 3300355711*, the government's motion to dismiss or in the alternative for summary judgment (File No. 1:05-CV-295, Dkt. No. 56), and Claimants Bank Midwest N.A. and Solarcom Inc.'s joint motion for summary judgment (File No. 1:05-CV-295, Dkt. No. 41).  For the reasons that follow, in *United States v. One Silicon Valley Bank Account, 3300355711*, Bank Midwest N.A. and Solarcom Inc.'s motion for summary judgment will be denied, the government's motion to dismiss will be denied, and the government's motion for summary judgment will be granted. In *United States v. Watson*, the proceeds of the nine

bank accounts specified in Count 10 of the superseding indictment will be forfeited to the United States.

## I.  Background

### A.    CyberNET

Both the civil and criminal forfeiture cases stem from the operations of CyberNET. CyberNET consisted of several companies, including Cybernet Engineering, Cyberco Holdings, and CyberNET.  The Court will refer to these companies collectively as CyberNET.

CyberNET purchased or leased office and computer equipment from a group of fictitious shell companies.  The fictitious suppliers of office and computer equipment were Teleservices Group ("Teleservices"), T-Resources, and Corporate Property Associates. CyberNET obtained  financing from a variety of lenders to lease or purchase equipment from the shell companies.  The lenders would pay the fictitious supplier for the office or computer equipment, but the fictitious supplier did not actually provide any office or computer equipment to CyberNET.  After consummating the lease or purchase, the funds that the lender provided to the fictitious supplier would be transferred to CyberNET.  The CyberNET principals established an intricate system of false phone numbers, false mailing addresses, false invoices, fake boxes of equipment, and even fake data centers to make all of these transactions appear legitimate.  The proceeds of this fraud were then used to

3

personally enrich the CyberNET principals.   Between 2002 and 2004, CyberNET fraudulently obtained over $100,000,000.

CyberNET was led by the late Barton Watson.   Krista L. Kotlarz Watson was at various times CyberNET's president, vice-president, director, and treasurer.   Paul Nathan Wright was an employee of CyberNET and assisted in setting up the various shell companies.   Geraldine Watson represented herself to be an employee of CyberNET as well as the owner of Corporate Property Associates.

On November 30, 2006, the grand jury indicted Krista L. Kotlarz Watson, Geraldine Watson, and Paul Nathan Wright.   On February 26, 2007, Geraldine Watson pleaded guilty to making a false statement to a licensed firearms dealer, 18 U.S.C. § 922(a)(6).   On June 5, 2007, the Court sentenced Geraldine Watson to two years of probation, a fine of $1,000, and a special assessment of $100.   On August 23, 2007, the government obtained a superseding indictment against Krista L. Kotlarz Watson and Paul Nathan Wright.   On August 31, 2007, Paul Nathan Wright pleaded guilty to conspiring to commit bank fraud, mail fraud, and money laundering, 18 U.S.C. §§ 371, 1341, 1344, 1956, 1957.   On December 14, 2007, the Court sentenced Paul Nathan Wright to thirty months of imprisonment, three years of supervised release, restitution of $32,583,952.36, a forfeiture money judgment of $100,000,000, and a special assessment of $100.   On September 4, 2007, Krista L. Kotlarz Watson pleaded guilty to conspiracy to commit bank fraud, mail fraud, and money laundering, 18 U.S.C. §§ 371, 1341, 1344, 1956, 1957, and tax evasion,

4

26 U.S.C. § 7201.  On December 11, 2007, the Court sentenced Krista L. Kotlarz Watson to sixty months on the conspiracy count and a consecutive twenty-four months on the tax evasion count, three years of supervised release on each count, to be served concurrently, restitution of $72,872,719.74, a forfeiture money judgment of $100,000,000, and a special assessment of $200.

**B.    The Seized Assets**

In November 2004 the F.B.I. and the I.R.S. seized approximately $4,000,000 in CyberNET assets pursuant to a series of seizure warrants.  The F.B.I. and the I.R.S. initially sought to administratively forfeit the seized assets; however, some of the financial institutions who had lent money to CyberNET filed claims of actual ownership, so the F.B.I. and I.R.S. were unable to proceed with administrative forfeiture as to those assets.  As a consequence of the financial institutions filing claims the United States could only seek to forfeit the seized assets through filing a civil or criminal forfeiture action.  18 U.S.C. § 983(a)(3).  In June 2005 when the United States was confronted with this decision, the United States Attorney's Office was not yet prepared to seek a criminal indictment that included a forfeiture count against the individuals responsible for CyberNET.  (File No. 1:05-CV-295, Dkt. No. 92, Gov't's Br. re Consolidated Hr'g 6;  File No. 1:06-CR-290, Dkt. No. 126, Gov't's Br. re Consolidated Hr'g 6.)  Hence the United States filed ten separate civil forfeiture complaints against the seized bank accounts.  Nine of the those ten civil

forfeiture actions remain pending.[1]  Those nine civil forfeiture actions address the same nine bank accounts that are at issue in the ancillary criminal forfeiture proceeding in *United States v. Watson*; however, only one of the nine civil forfeiture actions was consolidated with the ancillary criminal forfeiture proceeding.  (12/10/2007 Mem. Op. 5.)  The nine bank accounts that the government seeks to forfeit in the superseding indictment in *United States v. Watson*, are:

   a.   One Chemical Bank Shoreline Account Number 50224019400 in the amount of One Hundred Thousand Dollars ($100,000);

   b.   One Comerica Bank Account Number 6811948139 in the Amount of Seven Hundred Thousand Dollars ($700,000.00);

   c.   One Fifth Third Bank Account Number 7680526741 in the Amount of Twenty Thousand Two Hundred Ninety-One and 27/100 Dollars ($20,291.27);

   d.   One Huntington National Bank Account Number 01159630935 in the Amount of Seven Hundred Five Thousand, One Hundred Sixty-Eight and 60/100 Dollars ($705,168.60);

   e.   One Independence Community Bank Account Number 92043867 in the Amount of Seven Hundred Fifty Thousand Dollars ($750,000.00);

   f.   One J.P. Morgan Chase Bank Account Number 026073870865 in the Amount of Seven Hundred Fifty Thousand Dollars ($750,000.00);

   g.   One Macatawa Bank Account Number 64010200 in the Amount of Twenty-five Thousand Dollars ($25,000.00);

   h.   One Macatawa Bank Account Number 26-002212 in the Amount of Two Hundred Thousand Dollars ($200,000.00); and

   i.   One Silicon Valley Bank Account 3300355711 in the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty-two and 62/100 Dollars ($113,952.62).

---

[1]On January 27, 2006, the Court entered a judgment of forfeiture by default in *United States v. One Macatawa Bank Account Number 182000934 in the amount of Six Thousand, Six Hundred Fifty-One Dollars and 48/100 ($6,651.48)*.  (File No. 1:05-CV-665, Dkt. No. 18, J. of Forfeiture by Default.)

(File No. 1:06-CR-290, Dkt. No. 61, Superseding Indictment 24.)[2]  The Court will refer to all nine accounts collectively as the "Seized Assets."  The last account, item i, is also the subject of the civil forfeiture case that the Court consolidated with the ancillary criminal forfeiture proceeding, the Court will refer to this account as the "Silicon Valley Bank Account."  The Court makes no determination as to whether this opinion and the associated orders will have preclusive effect in the other eight civil forfeiture cases.

C.    **Procedural History in** *United States v. One Silicon Valley Bank Account, 3300355711*

On April 21, 2005, the government filed the complaint for forfeiture *in rem* in *United States v. One Silicon Valley Bank Account, 3300355711*.  The government seeks civil forfeiture under 18 U.S.C. § 981(a)(1)(A), (a)(1)(C), and 28 U.S.C. § 2461(c).  On June 20, 2005, Bank Midwest N.A ("Bank Midwest") filed a statement of verified interest and right.  On June 24, 2005, Solarcom Inc. ("Solarcom") filed a verified statement of interest and right.

On November 15, 2006, Bank Midwest and Solarcom jointly filed the motion for summary judgment that is presently before the Court.  On November 21, 2006, the government moved to stay all of the civil forfeiture proceedings to permit the government to conduct the related criminal investigation.  On December 14, 2006, the Court denied the motion to stay concluding that the government had failed to show that discovery in the civil

_____

[2]The original indictment sought criminal forfeiture of these same nine accounts.  (File No. 1:06-CR-290, Dkt. No. 4, Indictment.)

7

cases would adversely affect the criminal investigation.  (File No. 1:05-CV-295, Dkt. No. 47, 12/14/2006 Order 3.)  On January 19, 2007, M&I Equipment Finance Company, El Camino Resources Ltd., National City Corporation, U.S. Bancorp Equipment Finance Inc., and U.S. Bancorp/Oliver-Allen Technology Leasing filed a joint motion to intervene.  Bank Midwest and Solarcom opposed the joint motion to intervene.  On June 1, 2007, the Court denied the joint motion to intervene, concluding that the proposed intervenors lacked statutory standing because they had not filed verified statements of right or interest within the time permitted by Rule C(6)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  (File No. 1:05-CV-295, Dkt. No. 76, 06/01/2007 Op. 4-6.)  On January 25, 2007, the government filed a motion to dismiss or for summary judgment as to the claims of Bank Midwest and Solarcom.

**D.     Forfeiture Procedural History in *United States v. Watson***

The superseding indictment seeks the criminal forfeiture of the Seized Assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), (a)(2), and 28 U.S.C. § 2461 against Krista L. Kotlarz Watson and Paul Nathan Wright.  Neither Krista L. Kotlarz Watson nor Paul Nathan Wright is contesting the criminal forfeiture.  (File No. 1:06-CR-290, Dkt. No. 73, Paul Nathan Wright Plea Agreement ¶ 13;  File No. 1:06-CR-290, Dkt. No. 76, Krista Kotlarz Watson Plea Agreement ¶ 18.)  The Court entered a preliminary order of forfeiture as to the Seized Assets on September 24, 2007.  (File No. 1:06-CR-290, Dkt. No. 80, Preliminary Order of Forfeiture.)  The preliminary order of forfeiture forfeited the Seized

Assets to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461.  (*Id.* at 2.)  Although Krista L. Kotlarz Watson and Paul Nathan Wright did not contest the criminal forfeiture, fifteen financial institutions and two bankruptcy trustees have filed petitions of right, title, or interest.  The financial institutions that have filed claims in the criminal forfeiture case are: BAL Global Finance LLC, Banc of America Leasing and Capital LLC, Bank Midwest N.A., El Camino Resources Ltd., ePlus Group Inc., General Electric Capital Corporation, Heller Financial Leasing Inc., Huntington National Bank, M&I Equipment Finance Company, National City Corporation, Solarcom Capital LLC, Sterling Bank, TAGE Equipment Financial Services Corporation, U.S. Bancorp Equipment Finance Inc., and U.S. Bancorp/Oliver-Allen Technology Leasing.  The two bankruptcy trustees are Thomas C. Richardson, in his capacity as the Chapter 7 Bankruptcy Trustee for Cyberco Holdings Inc., Bankruptcy Case No. 04-14905, and John A. Porter, in his capacity as Chapter 7 Bankruptcy Trustee for Krista L. Kotlarz Watson, Bankruptcy Case No. 04-15817.

## II. Consolidation

### A.    Concurrent Civil and Criminal Forfeiture Actions and 18 U.S.C. § 983(a)(3)(C)

In opposing the government's motion to consolidate, in other briefing, and at the January 10 hearing Bank Midwest and Solarcom have contended that 18 U.S.C. § 983(a)(3)(C) prohibits concurrent civil and criminal forfeiture actions.  (*E.g.*, File No. 1:06-CR-290, Dkt. No. 86, Bank Midwest's Verified Pet. 2-4;  File No. 1:06-CR-290, Dkt.

9

No. 102, Bank Midwest and Solarcom's Resp. in Opp'n to Gov't's Mot. to Consolidate 8-10.)  The Court initially addressed this issue in the memorandum opinion and order that granted the government's motion to consolidate.  (12/10/2007 Mem. Op. 2-5.)

> Title 18, section 983(a)(3)(C) of the United States Code provides:
>
> In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.

18 U.S.C. § 983(a)(3)(C).  Bank Midwest and Solarcom's argument emphasizes the second sentence; however, the first sentence of 18 U.S.C. § 983(a)(3)(C) explicitly permits the government to file both a civil forfeiture complaint and to include a forfeiture allegation in a criminal indictment.  (12/10/2007 Mem. Op. 3); *$8,050.00 in United States Currency v. United States*, 307 F. Supp. 2d 922, 926 (N.D. Ohio 2004).

Bank Midwest and Solarcom contend that if the government initiates both civil and criminal forfeiture actions, both actions are governed by the civil forfeiture statutes.  Bank Midwest and Solarcom argue that the necessary inference from the "only" in the second sentence of § 983(a)(3)(C) is that if the criminal forfeiture proceeding is *not* the only proceeding, then the civil forfeiture statutes govern both the civil and the criminal forfeiture actions.  Contrary to Bank Midwest and Solarcom's contention, when the second sentence of § 983(a)(3)(C) is read in the context of § 983(a)(3)(A-B) it is clear that the second sentence of § 983(a)(3)(C) does not apply the civil forfeiture statutes to criminal forfeiture

10

proceedings when the government has initiated both.  Section 983(a)(3)(A) provides that if a person claiming property seized in a nonjudicial civil forfeiture proceeding files a claim, then no later than ninety days after the claim has been filed the government must either file a civil forfeiture complaint or return the property.  18 U.S.C. § 983(a)(3)(A).  Section 983(a)(3)(B) provides that

> (B) If the Government does not--
>     (i) file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or
>     (ii) before the time for filing a complaint has expired--
>         (I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and
>         (II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,
> the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.

18 U.S.C. § 983(a)(3)(B).  In circumstances where the government does not take any of the actions set forth in § 983(a)(3)(B) within the ninety-day period, the second sentence of § 983(a)(3)(C) applies if the government later pursues a criminal forfeiture action in relation to the same assets.  *United States v. Martin*, 460 F. Supp. 2d 669, 675 (D. Md. 2006).  The second sentence of § 983(a)(3)(C) enables the government to proceed with the criminal forfeiture action despite the fact that the prior civil forfeiture warrants were rendered invalid by § 983(a)(3)(B).  *Id.*  The second sentence of § 983(a)(3)(C) limits the application of the final clause of § 983(a)(3)(B) to civil forfeiture actions; therefore the "only" in the second

sentence of § 983(a)(3)(C) should not be read to mean that when the government initiates both civil and criminal forfeiture actions the civil forfeiture statutes govern both actions.

### B.    Consolidated Proceeding

The Court consolidated the ancillary criminal forfeiture proceeding in *United States v. Watson* and *United States v. One Silicon Valley Bank Account, 3300355711*, on December 10, 2007.  (12/10/2007 Mem. Op.)  In the order consolidating these two cases the Court also indicated that parties could file additional briefing on the issues that the Court was to consider at the January 10, 2008, hearing.  (*Id.*)  Only the government, Huntington National Bank ("Huntington"), and  M&I Equipment Finance Company filed additional briefing.

### III.  Forfeiture Standards

### A.    Standard for the Ancillary Criminal Forfeiture Proceeding

In the ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n)(4-6) and Federal Rule of Criminal Procedure 32.2(c)(1) the court must determine by a preponderance of the evidence whether a petitioner has a legal right, title, or interest in the property, and whether such right, title, or interest renders the order of forfeiture invalid in whole or in part.  21 U.S.C. § 853(n)(6)(A).  A petitioner's legal right, title, or interest renders the order of forfeiture invalid in whole or in part if "the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture

of the property under this section . . . ." *Id.* Each petitioner has the burden of proof on its claim of legal right, title, or interest. 21 U.S.C. § 853(n)(6); *Pacheco v. Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004).

Several of the verified petitions filed in the ancillary criminal forfeiture proceeding make reference to 18 U.S.C. § 983(d)(1), which provides for an "innocent owner" defense. "Unlike the civil forfeiture statutes, the criminal forfeiture statutes contain no provision for an 'innocent owner' defense for third parties." *United States v. Soreide*, 461 F.3d 1351, 1354 (11th Cir. 2006). Nevertheless, Huntington contends that the reference to 18 U.S.C. § 981 in the preliminary order of forfeiture makes § 983(d)(1) applicable to the ancillary criminal forfeiture proceeding. Huntington is correct that the preliminary order of forfeiture refers to § 981, as does the forfeiture count in the superseding indictment. In relevant part, § 983(d)(1) provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). Section 983(i)(1) defines "civil forfeiture statute" as used in § 983 to mean "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense . . . ." 18 U.S.C. § 983(i)(1). The forfeiture of the Seized Assets in the ancillary criminal forfeiture proceeding was provided for by the sentences of Krista L. Kotlarz Watson and Paul Nathan Wright that were imposed based upon their pleading guilty to criminal offenses. Thus, the definition of "civil forfeiture statute" in § 983(i)(1) operates to preclude § 983(d)(1) from applying in this ancillary criminal forfeiture proceeding.

13

Huntington directs the Court to *United States v. $293,316 in United States Currency*, 349 F. Supp. 2d 638, 643-44 (E.D.N.Y. 2004) in support of the contention the § 983 generally applies to forfeiture actions under § 981.  Huntington is correct that the court in *$293,316 in United States Currency* held that § 983, the civil forfeiture procedural statute, applies to forfeiture under § 981, a civil forfeiture statute.  349 F. Supp. 2d at 643-44.  However, *$293,316 in United States Currency* was not addressing the application of § 983 to criminal forfeiture actions.  Rather, *$293,316 in United States Currency* was addressing the types of civil forfeiture to which § 983 does not apply under § 983(i)(2).  Hence, *$293,316 in United States Currency* is not contrary to the Court's earlier analysis of § 983(i)(1).

**B.    Standard for Civil Forfeiture**

In a civil forfeiture action the government bears the burden yof proving, by a preponderance of the evidence, that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1), (c)(3);  *Campbell v. Putnam*, 38 F. App'x. 298, 300 (6th Cir. 2002).  "Accordingly, the government bears the burden to establish a 'substantial connection between the property and the offense.'"  *United States v. $252,300.00 in United States Currency*, 484 F.3d 1271, 1273 (10th Cir. 2007) (quoting 18 U.S.C. § 983(c)(3)).  However, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."  18 U.S.C. § 983(d)(1).

"The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."  *Id.*

## IV.  Constructive Trusts

A.     **Constructive Trusts in** *United States v. One Silicon Valley Bank Account, 3300355711*

Bank Midwest and Solarcom moved for summary judgment contending that under 18 U.S.C. § 983(d)(1) they are innocent owners of $113,440.23 of the funds in the Silicon Valley Bank Account by operation of a constructive trust.  The government first moves to dismiss Bank Midwest and Solarcom's claims contending that Bank Midwest and Solarcom lack Article III standing.  In the alternative the government moves for summary judgment contending that under § 983(d)(1) Bank Midwest and Solarcom are not innocent owners. Bank Midwest and Solarcom have agreed to be treated as a single claimant for the purposes of the motion for summary judgment.

The civil forfeiture case is an *in rem* action against $113,952.62 in the Silicon Valley Bank Account.  Bank Midwest and Solarcom contend that they are the beneficiary of a constructive trust in the amount of $113,440.23.  The difference between the account balance and the amount that Bank Midwest and Solarcom assert that they have an interest in is based on the amount that was in the account prior to Bank Midwest and Solarcom's funds being transferred into the account.  The funds in the Silicon Valley Bank Account were held in the name of Teleservices.

Bank Midwest and Solarcom contend that the following facts establish that they are the beneficiary[3] of a constructive trust.  On April 1, 2004, Solarcom and CyberNET entered into a master lease agreement.  Under the lease, Solarcom would fund the purchase of certain computer equipment from Teleservices and CyberNET would then lease that equipment from Solarcom.  On November 5, 2004, Solarcom issue a check to Teleservices in the amount of $2,984,879.97, which was  deposited into the Silicon Valley Bank Account.  The transaction between Teleservices and CyberNET was fraudulent, as no computer equipment was provided to CyberNET by Teleservices in relation to the $2,984,879.97.

On November 5, 2004, Bank Midwest and CyberNET entered into a loan agreement, pursuant to which CyberNET borrowed $4,925,686.26 from Bank Midwest.  CyberNET's president then directed Bank Midwest to disburse the loan proceeds to Teleservices.  CyberNET provided Bank Midwest invoices evidencing the purchase of equipment with the loan proceeds.  Bank Midwest transferred $4,925,686.26 to the Silicon Valley Bank Account.  The transaction between Teleservices and CyberNET was fraudulent, as Teleservices did not provide any computer equipment to CyberNET in relation to the $4,925,686.26.

---

[3]In consideration of Bank Midwest and Solarcom's agreement to be treated as a single claimant for the motion for summary judgment, the Court will use the singular "beneficiary" to refer to their collective status.

16

On November 1, 2004, the Silicon Valley Bank Account had a balance of $512.39. A $100.00 check cleared on November 5, 2004, reducing the balance to $412.39. Also on November 5, 2004, Bank Midwest wire transferred $4,925,686.26 to the account, resulting in a closing balance that day of $4,926,098.65. On November 15, 2005, the $2,94,879.97 check from Solarcom was deposited into the Silicon Valley Bank Account. On November 23, 2004, federal law enforcement authorities seized the Silicon Valley Bank Account. At the time of seizure the account balance was $113,952.62. Between November 5 and November 23, 2004, the only deposits into the Silicon Valley Bank Account were the wire transfer from Bank Midwest and the check from Solarcom.

### 1.    Bank Midwest and Solarcom have Article III standing

The government moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss Bank Midwest and Solarcom's claims for lack of Article III standing. "In order to contest a governmental forfeiture action, claimants must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6), as well as the Article III standing required for any action brought in federal court." *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998) (citing *United States v. $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990)). To establish Article III standing in a forfeiture action, "a claimant must have a colorable ownership, possessory or  security interest in at least a portion of the defendant property." *Id.* Bank Midwest and Solarcom have established a colorable ownership interest in $113,440.23 of the funds in the Silicon Valley Bank Account based on a constructive

17

trust theory. *See United States v. $ 4,224,958.57,* 392 F.3d 1002, 1005 (9th Cir. 2004) (holding that if the claimants prove their constructive trust claim they would have an equitable interest in the defendant property which provides them with Article III standing). Therefore, the government's motion to dismiss Bank Midwest and Solarcom's claims will be denied.

2.   <u>Bank Midwest and Solarcom are not the beneficiary of a constructive trust on $113,440.23 of the funds in the Silicon Valley Bank Account</u>

The cross-motions for summary judgment filed by the government, Bank Midwest, and Solarcom present the Court with two issues.  First, whether the beneficiary of a constructive trust can be an innocent owner under 18 U.S.C. § 983(d)(1).  If the beneficiary of a constructive trust can be an innocent owner under § 983(d)(1), whether Bank Midwest and Solarcom are the beneficiary of a constructive trust.

a.   *Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the nonmoving party must demonstrate by affidavits, depositions, answers to

18

interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

The standards upon which the court evaluates a motion for summary judgment do not change simply because the parties present cross-motions. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). "'The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.'" *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

      b.    *The beneficiary of a constructive trust can be an innocent owner under 18 U.S.C. § 983(d)(1)*

The government seeks civil forfeiture under 18 U.S.C. § 981(a)(1)(A), (a)(1)(C), and 28 U.S.C. § 2461(c).  Bank Midwest and Solarcom contend that they are innocent owners under 18 U.S.C. § 983(d)(1).  Section 983(d)(1) provides that an innocent owner's interest shall not be forfeited under any civil forfeiture statute, but the claimant asserting innocent owner status has the burden of proving such status by a preponderance of the evidence.  18 U.S.C. § 983(d)(1).  An "innocent owner" is defined as an "owner" who "did not know of the conduct giving rise to forfeiture . . . ."  18 U.S.C. § 983(d)(2)(A)(i). As defined by § 983(d)(6), for purposes of § 983(d) the term "owner"

> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
> (B) does not include--
>> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
>> (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
>> (iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d)(6).

Bank Midwest and Solarcom contend that the beneficiary of a constructive trust can be an owner under § 983(d)(6).  The Sixth Circuit has not addressed this question.  However, a district court within the Sixth Circuit has treated the beneficiary of a constructive trust as a type of owner under § 983(d)(6) without expressly addressing whether the beneficiary of a constructive trust qualifies as an owner under § 983(d)(6).  *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 882-83 (E.D. Mich. 2007).

20

"In statutory construction cases, 'the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Fullenkamp v. Veneman*, 383 F.3d 478, 481 (6th Cir. 2004) (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002)). The beneficiary of a constructive trust is not among the categories listed in § 983(d)(6)(B)(i) that are explicitly excluded from the definition of owner. The government contends that the beneficiary of a constructive trust is a subset of "a person with only a general unsecured interest" and is thereby not an owner under § 983(d)(6)(B)(i).

The statute does not define "general unsecured interest" and the meaning of that term is not clear from the statute's structure, thus reference to legislative history is appropriate. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999) ("[A court] may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980))). Title 18, section 983 of the United States Code was added by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub L. No. 106-185, 114 Stat. 202. In the Senate the civil asset forfeiture bill originally introduced by Senator Sessions included four categories of persons excluded from the definition of "owner" under what would eventually be enacted as § 983(d)(6)(B). Civil Asset Forfeiture Reform Act of 1999, S. 1701, 106th Cong. § 10 (1999); 145 Cong. Rec. S12101, 12108-09 (daily ed. Oct. 6, 1999) (Sen. Sessions introducing S. 1701). *See also* 1 David B. Smith, *Prosecution and Defense*

21

*of Forfeiture Cases* § 9.04 n.44 (2007) (discussing the legislative history of CAFRA in the Senate).  The fourth category that Senator Sessions's version of the bill explicitly excluded from the definition of owner was "a beneficiary of a constructive trust."  Civil Asset Forfeiture Reform Act of 1999, S. 1701, 106th Cong. § 10.  In the debates in the House of Representatives leading to the adoption of CAFRA Representative Hutchinson offered an amendment that would have, among other changes, added a fourth category to § 983(d)(6)(B).  The fourth category would have excluded "a beneficiary of a constructive trust" from the definition of "owner" under § 983(d).  145 Cong. Rec. H4736, 4737 (daily ed. June 22, 1999) (amendment offered by Rep. Hutchinson).  Representative Hutchinson's amendment was rejected.  145 Cong. Rec. H4858, 4876 (daily ed. June 24, 1999) (recorded vote on Rep. Hutchinson's amendment).

"Where Congress includes limiting language in an earlier version of a bill  but deletes it prior to enactment, it may be presumed that the limitation was not intended."  *Russello v. United States*, 464 U.S. 16, 23-24 (1983) (citing *Arizona v. California*, 373 U.S. 546, 581 (1963)).  The initial version of CAFRA proposed in the Senate and an amendment offered in the House of Representatives both treated the beneficiary of a constructive trust as distinct from a general unsecured interest.  The deletion of the explicit exclusion indicates that Congress did not intend the beneficiary of a constructive trust to be excluded from the definition of "owner" under § 983(d).

Although the government does not agree that the legislative history indicates that the beneficiary of constructive trust can be an "owner" under § 983(d), the government acknowledges that

> The staff at the Asset Forfeiture Money Laundering Section for the Department of Justice (who assisted in drafting the [CAFRA]) thought that specific preclusion of constructive trusts should not be included because there might be instances where someone was the true beneficiary of a constructive trust. Thus, a blanket prohibition was not appropriate just to exclude the claimants who were truly meant to be excluded -- namely unsecured creditor-victims in a fraud case.

(File No. 1:05-CV-295, Dkt. No. 57, Gov't's Resp 14 n.10.) The government's position acknowledges that under § 983(d)(6) there could be some instances in which the beneficiary of a constructive trust is an "owner." In consideration of the text and legislative history the Court concludes that the beneficiary of a constructive trust can be an "owner" under § 983(d)(6).

   c.   *Bank Midwest and Solarcom are not the beneficiary of a constructive trust*

As the Court has concluded that the beneficiary of a constructive trust can be an "owner" under § 983(d)(6), the Court must consider whether there is a genuine issue of material fact as to Bank Midwest and Solarcom being the beneficiary of a constructive trust. State law governs the existence of a party's property interest in a civil forfeiture case. *United States v. Harris,* 246 F.3d 566, 571 (6th Cir. 2001); *United States v. 2525 Leroy Lane*, 910 F.2d 343, 347 (6th Cir. 1990). The government contends that Michigan law governs, while Bank Midwest and Solarcom contend that California law governs. As this

23

is a federal question case, the Court applies federal choice-of-law principles. *Med. Mut. v. DeSoto*, 245 F.3d 561, 570 (6th Cir. 2001). In the absence of any established body of federal choice-of-law rules, the Court's inquiry begins with the Restatement (Second) of Conflicts of Law. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006). Section 145 of the *Restatement (Second) of Conflict of Laws* provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Restatement (Second) of Conflict of Laws* § 145 (1971). Section 6 of the *Restatement* provides in relevant part:

> the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

*Id.* at § 6.

Bank Midwest and Solarcom contend that there is no conflict between Michigan and California law. (Bank Midwest and Solarcom's Br. in Supp. 19.) However, at a minimum, Michigan and California law conflict as to when a constructive trust comes into existence,[4] so the Court must proceed with the choice-of-law inquiry. *Cf. Weekes v. Mich. Chrome & Chemical Co.*, 352 F.2d 603, 606 (6th Cir. 1965) (ceasing the choice-of-law inquiry after determining that the two states would apply "identical principles" to the question at issue).

Silicon Valley Bank is a California bank. Bank Midwest is a national banking association with its principal place of business in Missouri. (File No. 1:05-CV-295, Dkt. No. 41, Bank Midwest and Solarcom's Statement of Uncontroverted Material Facts ¶ 1.) Solarcom is a Georgia limited liability company with its principal place of business in Georgia. (*Id.* at ¶ 2.) CyberNET and Teleservices were operated from Michigan. (*Id.* at ¶¶ 3-4.) As CyberNET and Teleservices were operated from Michigan the fraudulent activity was primarily perpetrated in and from Michigan. Although the Silicon Valley Bank Account is in California, Bank Midwest and Solarcom incurred the harm of CyberNET's fraud in Missouri and Georgia, respectively. The center of all these interactions was CyberNET, which operated from Michigan. Additionally, the application of Michigan law is not contrary to any justified expectation given that the transactions all involved CyberNET, which operated from Michigan. Thus, applying §§ 6 and 145 of the *Restatement*, whether

---

[4]Under California law a constructive trust arises immediately upon the fraudulent transfer. *$4,224,958.57*, 392 F.3d at 1004. Under Michigan law a constructive trust does not exist until so ordered by a court. *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000).

25

Bank Midwest and Solarcom are the beneficiary of a constructive trust is governed by Michigan law.

"Under Michigan law, a 'constructive trust is strictly not a trust at all, but merely a remedy administered in certain fraudulent breaches of trusts.'" *Blachy*, 221 F.3d at 905 (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*, 259 Mich. 489, 494, 244 N.W. 138 (1932)). "[T]he imposition of a constructive trust is appropriate in order 'to do equity or to prevent unjust enrichment . . . .'" *Id.* at 903 (omission in *Blachy*) (quoting *Kammer Asphalt Paving Co. v. East China Twp. Sch.*, 443 Mich. 176, 188, 504 N.W.2d 635 (1993)). A constructive trust "may be imposed when property 'has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . .'" *Kammer Asphalt Paving Co.*, 443 Mich. at 188 (omission in *Krammer Asphalt Paving Co.*) (quoting *Potter v. Lindsay*, 337 Mich. 404, 411, 60 N.W.2d 133 (1953)). "The burden of proof is upon the person seeking the imposition of such a trust." *Id.* (citing *MacKenzie v. Fritzinger*, 370 Mich. 284, 121 N.W.2d 410 (1963)).

A constructive trust is not proper because the funds sought by Bank Midwest and Solarcom cannot be clearly traced to Bank Midwest and Solarcom. The recognition of a constructive trust requires that the money or property on which the trust is imposed must be "clearly traced" to the beneficiary of the constructive trust. *Biddle v. Biddle*, 202 Mich. 160,

167, 168 N.W. 92 (1918).  *See also In re CyberCo Holdings, Inc.*, Case No. HG 04-14905, 382 B.R. 118, 2008 Bankr. LEXIS 211, at *21 (Bankr. W.D. Mich. Jan. 29, 2008).[5]  Bank Midwest and Solarcom contend that $113,440.23 of the funds in the Silicon Valley Bank Account are exclusively traceable to them.  Bank Midwest and Solarcom's tracing is based on treating them as a single entity; however, if they are not treated as a single entity then the funds do not have a clear traceable path.  Bank Midwest and Solarcom have jointly brought their motion and have consented to being treated as a single entity for this purpose.  Beyond the expediency that being treated as single entity serves for the purposes of tracing, Bank Midwest and Solarcom have not offered any other justification.   Bank Midwest and Solarcom direct the Court to *County of Oakland v. Vista Disposal (County of Oakland I)*, 900 F. Supp. 879, 891 (E.D. Mich. 1995), in support of their combined tracing.  In *County of Oakland I* the court did recognize that a "beneficiary can also trace the funds if they are commingled with other trusts and funds."  *Id.* (citing *Long v. Earle*, 277 Mich. 505, 526, 269 N.W. 577 (1936), and 76 Am. Jur. 2d, Trusts, § 259, at 480).  The tracing at issue in *County of Oakland I* involved the beneficiary's funds moving through a third-party that combined the beneficiary's funds with the funds of others before transferring the funds to the trustee.  *Id.* at 888.  On that basis *County of Oakland I* is distinguishable because the court was not

---

[5]This bankruptcy court decision is in the related bankruptcy case for CyberCo Holdings.  The trustee for CyberCo Holdings in that bankruptcy case has filed a petition in this ancillary criminal forfeiture proceeding.  Huntington filed a copy of the Bankruptcy Court's January 29, 2008, decision with this Court.  (File No. 1:06-CR-290, Dkt. No. 129, Ex. A.)

presented with the question of multiple beneficiaries seeking to have their funds treated as a though they were from a single entity when the funds were transferred to the third-party.[6]

The equitable remedy of a constructive trust is not proper in this case because Bank Midwest and Solarcom have an adequate remedy at law. A constructive trust is an equitable remedy. *Kent v. Klein*, 352 Mich. 652, 656, 91 N.W.2d 11 (1958). "[A]n equitable remedy is neither necessary nor appropriate where a resolution under the law is available." *Everett v. Nickola,* 234 Mich. App. 632, 637, 599 N.W.2d 732 (1999). The petition for remission process, which would be available to Bank Midwest and Solarcom if the Silicon Valley Bank Account is forfeited, is an adequate remedy at law. *E.g.*, *United States v. Ribadeneira*, 105 F.3d 833, 837 n.5 (2d Cir. 1997).

---

[6]Even if *County of Oakland I* supported the type of tracing sought by Bank Midwest and Solarcom, *County of Oakland I* does not support the type of constructive trust sought by Bank Midwest and Solarcom. In *County of Oakland I*, after the court determined the claimant's damages based on a constructive trust, the court concluded that the equitable principles upon which the constructive trust was based limited the claimant to a pro-rata recovery. *County of Oakland I*, 900 F. Supp. at 891-92. This was based on the court's determination that under a constructive trust all of the victims should recover on a pro-rata basis. *Id.* In *County of Oakland v. Vista Disposal, Inc. (County of Oakland II)*, 917 F. Supp 515 (E.D. Mich. 1996), on a motion for reconsideration, the court determined that it had erred in reducing the claimant's damages to a pro-rata recovery. 917 F. Supp. at 517. Although the pro-rata distribution for the proceeds of the constructive trust was generally correct, the court reasoned that because none of the other victims had filed claims the effect of reducing the claimant's damages to a pro-rata recovery was to give a "windfall" to the United States. *Id.* at 516. In the instant case the other victims have filed claims, so if the Court recognized a constructive trust under *County of Oakland I*, the constructive trust would be distributed on a pro-rata basis to all of the victims.

28

Lastly, a constructive trust is imposed when it is "'unconscionable for the holder of the legal title to retain and enjoy the property . . . .'" *Kammer Asphalt Paving Co.*, 443 Mich. at 188 (omission in *Krammer Asphalt Paving Co.*) (quoting *Potter*, 337 Mich. at 411)).  The legal title of Krista L. Kotlarz Watson and Paul Nathan Wright to the Silicon Valley Bank Account has already been forfeited.  If a constructive trust is not established, then the Silicon Valley Bank Account will be forfeited to the government.  The government has indicated that if the Silicon Valley Bank Account is forfeited to the government, then it along with the other forfeited assets will be distributed pro-rata to the victims of the CyberNET fraud based on each victim's claimed loss.  (Gov't Br. re Consolidated Hr'g 1-5.)  Although Bank Midwest and Solarcom will likely receive less under the pro-rata distribution, such a distribution is not unconscionable.

As a matter of law, Bank Midwest and Solarcom are not the beneficiary of a constructive trust.  Therefore, Bank Midwest and Solarcom are not innocent owners under 18 U.S.C. § 983(d)(6).

3.  <u>Bank Midwest and Solarcom are not entitled to attorney's fees as prevailing innocent owners</u>

Title 28, section 2465(b)(1)(A) of the United States Code provides that a claimant who "substantially prevails" in a civil forfeiture proceeding is entitled to reasonable attorney's fees.  28 U.S.C. § 2465(b)(1)(A).  Bank Midwest and Solarcom seek an award of attorney's fees under this subsection.  As Bank Midwest and Solarcom are not, as a matter of law, innocent owners, *see supra* Section IV.A.2.c, Bank Midwest and Solarcom have not

substantially prevailed in this civil forfeiture action.   Therefore, Bank Midwest and Solarcom are not entitled to attorney's fees.

## B.   Constructive Trusts in *United States v. Watson*

In the ancillary criminal forfeiture action twelve financial institutions, including Bank Midwest and Solarcom, filed petitions that assert a constructive trust claim.[7]   However, none of those institutions have filed any additional briefing that sets forth the application of the constructive trust theory in the context of this ancillary criminal forfeiture proceeding.   In most of the verified petitions that assert a constructive trust claim the petitioner has referenced 18 U.S.C. § 983(d)(1), which provides the "innocent owner" defense in civil forfeiture proceedings, not 21 U.S.C. § 853(n)(6)(A), which permits third-parties to assert a "legal" interest in the property to be forfeited in criminal forfeiture proceedings.   As set forth in the analysis above the ancillary criminal forfeiture proceeding is governed by the criminal forfeiture statutes, not the civil forfeiture statutes.   *See supra* Section III.A.

A constructive trust is a "legal" interest under 21 U.S.C. § 853(n)(6)(A).   *United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988);   *United States v. Nava*, 404 F.3d 1119, 1130-31 (9th Cir. 2005).   Other than the constructive trust theory offered by Bank

---

[7]The other ten institutions that included a constructive trust claim in their petitions in the ancillary criminal forfeiture action are: BAL Global Finance LLC, Banc of America Leasing and Capital LLC, ePlus Group Inc., General Electric Capital Corporation, Heller Financial Leasing Inc., National City Corporation, Sterling Bank, TAGE Equipment Financial Services Corporation, U.S. Bancorp Equipment Finance Inc., and U.S. Bancorp/Oliver-Allen Technology Leasing.

Midwest and Solarcom, which the Court has concluded fails as a matter of law, no party has set forth the basis for their constructive trust claim beyond the bare assertion of the claim in their verified petitions.  None of the parties who asserted a constructive trust claim in their verified petition filed any additional briefing on the issue as was permitted by the Court's December 10, 2007, order.  Also, none of the parties who included a constructive trust claim in their verified petition contended at the January 10 hearing that an evidentiary hearing was necessary for them to establish their constructive trust claims.  "In general, undeveloped arguments are waived."  *Schreiber v. Moe*, 445 F. Supp. 2d 799, 812 (W.D. Mich. 2006) (citing *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000)).  Therefore, the constructive trust claims that have been asserted in the ancillary criminal forfeiture proceeding will be denied.

### V. The Bankruptcy Estates

The bankruptcy trustees for the bankruptcy estates of CyberCo Holdings and Krista L. Kotlarz Watson contend that the Seized Assets should be made part of the respective bankruptcy estates.  The trustees assert two theories in support of this contention.  First, the trustees contend that the Seized Assets are the property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a).  Second, the trustees contend that the bankruptcy estates are judicial lien creditors pursuant to 11 U.S.C. § 544(a).

Under the relation-back doctrine, set forth in 21 U.S.C. § 853(c), "'the government acquires its interest in the defendant's forfeited property at the time of the commission of

the criminal acts giving rise to the forfeiture.'" *Harris*, 246 F.3d at 575 (quoting *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991)).  Subject to certain exceptions, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  The trustee also has the rights and powers of the debtor.  11 U.S.C. § 544(a).  As a consequence of the preliminary order of forfeiture title in the Seized Assets vested in the government as of the date of the predicate criminal acts.  21 U.S.C. § 853(c); *United States v. Zaccagnino*, No. 03-10095, 2006 WL 1005042, at *3-4 (C.D. Ill. Apr. 18, 2006) (holding that title to property subject to forfeiture vests in the government as of the date of the predicate criminal act, even if a bankruptcy estate is created prior to the entry of a final judgment of forfeiture).  The predicate criminal acts predated the commencement of the bankruptcy cases, so the debtors had ceased to have a legal interest in the Seized Assets prior to the commencement of the bankruptcy cases.  Therefore, the claims of the bankruptcy trustees that have been asserted in the ancillary criminal forfeiture proceeding will be denied.

## VI. Secured Creditor

Huntington asserts that it has a legal right to the One Huntington National Bank Account Number 01159630935 in the amount of seven hundred five thousand, one hundred sixty-eight and 60/100 dollars ($705,168.60) ("Huntington National Bank Account") that the government seeks to forfeit.

CyberNET had a multi-million dollar line of credit with Huntington.  CyberNET granted Huntington a security interest in all of CyberNET's assets as collateral for the line of credit, which was memorialized in the October 25, 2002, Security Agreement between Huntinton and CyberCo Holdings Inc.  (File No. 1:06-CR-290, Dkt. No. 124, Huntington's Br. re Consolidated Hr'g, Ex. A, Oct. 25, 2002 Security Agreement.)  Huntington perfected this security interest with the appropriate U.C.C. filing.  (Huntington's Br. re Consolidated Hr'g, Ex. B, U.C.C. Financing Statement.)  Like several of the other financial institutions defrauded by CyberNET, Huntington financed the lease of computer equipment to CyberNET.  Huntington also served as guarantor for the credit cards Chase Manhattan Bank issued to CyberNET.  Huntington contends that CyberNET owes it $926,162.57.

In its verified petition and supplemental brief in the ancillary criminal forfeiture proceeding Huntington contends that it is an innocent owner under 18 U.S.C. § 983(d)(1). The Court will first analyze Huntington's claims under 21 U.S.C. § 853(n) as claims of third-parties in ancillary criminal forfeiture proceedings are governed by 21 U.S.C. § 853(n), not 18 U.S.C. § 983(d)(1).  *Soreide*, 461 F.3d at 1354;  *see supra* Section III.A.

**A.    Huntington does not have a legal interest right, title, or interest that renders the order of forfeiture invalid in whole or in part under § 853(n)(6)(A)**

In order to prevail under § 853(n)(6)(A) Huntington must have "a legal right, title, or interest in" the Huntington National Bank Account, and such right, title, or interest must have vested in Huntington rather than Krista L. Kotlarz Watson and Paul Nathan Wright or been superior to any right, title, or interest of Krista L. Kotlarz Watson and Paul Nathan

33

Wright at the time of the commission of the acts which gave rise to the forfeiture of the Huntington National Bank Account under § 853. The October 25, 2002, Security Agreement provides that "upon occurrence of an Event of Default" Huntington may, among other options, take possession of the collateral. (Oct. 25, 2002 Security Agreement ¶ 5.2.) Under the relation-back doctrine, "'the government acquires its interest in the defendant's forfeited property at the time of the commission of the criminal acts giving rise to the forfeiture.'" *Harris*, 246 F.3d at 575 (quoting *Lavin*, 942 F.2d at 185). Assuming *arguendo* that the CyberNET's fraud was an "event of default," the interest the United States obtained by criminal forfeiture still predates the interest of Huntington. The Huntington National Bank Account was a "deposit account." (File No. 1:06-CR-290, Dkt. No. 113, Huntington's Verified Pet. of Claim ¶ 10.) Although Huntington has contended that some of the funds in the Huntington National Bank Account were the "proceeds of Huntington's collateral," (*Id.* at ¶¶ 10, 11), Huntington has not indicated what proportion of the funds are such proceeds or offered any tracing analysis in support of such contentions. As Huntington has the burden of proof on this issue and has offered none, the funds in the Huntington National Bank Account will be analyzed as the deposits of third-parties. *See* 21 U.S.C. § 853(n)(6); *Pacheco*, 393 F.3d at 351. The transactions leading to the deposit of these funds by third-parties were part of the CyberNET fraud, which provides the basis for the criminal forfeiture. (Superseding Indictment 1-12; Preliminary Order of Forfeiture 1-2.) The interest the government obtains by forfeiture relates-back to the transactions that lead to the funds

34

being deposited in the Huntington National Bank Account. Thus, the interest the government obtained by forfeiture predates the deposit of the funds in the Huntington account, which is the earliest time that Huntington's interest could have attached to the funds.

## B.   Huntington is not an innocent owner under § 983(d)(1)

Although the interest of third-parties in criminal forfeiture proceedings is properly governed by 21 U.S.C. § 853(n), given that Huntington and the government addressed the application of 18 U.S.C. § 983(d)(1) the Court will as well. Huntington contends that by virtue of its security interest it is an innocent owner under § 983(d)(1). Huntington contends that its perfected security interest is a "recorded security interest," which is one of the types of ownership identified in § 983(d)(6)(A). A security interest in a deposit account is considered perfected under Michigan law when the secured party is in control of the account under Michigan Compiled Laws § 440.9104. M.C.L. § 440.9314(1). Under Michigan Compiled Laws § 440.9104(1)(a) a secured party has control of a deposit account if "[t]he secured party is the bank with which the deposit account is maintained." M.C.L. § 440.9104(1)(a). Under these Michigan statutes Huntington has a perfected recorded security interest. *See In re CyberCo Holdings*, 2008 Bankr. LEXIS 211, at *36 (determining, in the related bankruptcy proceeding for CyberCo Holdings, that "it appears from the pleadings that Huntington in fact did have a security interest in these deposited funds.").

35

Section 983(d)(6)(A) requires the security interest to be in "the specific property sought to be forfeited . . ." 18 U.S.C. § 983(d)(6)(A). Neither the October 25, 2002 Security Agreement nor the U.C.C. financing statement filed by Huntington specifically identify the Huntington National Bank Account. Therefore, Huntington lacks the specific interest in the Huntington National Bank Account that would be necessary for Huntington to qualify as an owner under § 983(d)(6)(A).

## VII. Conclusion

For the foregoing reasons, in *United States v. One Silicon Valley Bank Account, 3300355711*, Bank Midwest and Solarcom's motion for summary judgment will be denied, the government's motion to dismiss will be denied, and the government's motion for summary judgment will be granted. The claims of any right, title, or interest in or to Defendant One Silicon Valley Bank Account, 3300355711, by Bank Midwest and Solarcom under 18 U.S.C. § 983(d)(1) will be denied. An order will be entered in *United States v. One Silicon Valley Bank Account, 3300355711*, consistent with this opinion.

In the ancillary criminal forfeiture proceeding in *United States v. Watson*, the petitions claiming a legal right, title, or interest in the Seized Assets under 21 U.S.C. § 853(n)(6) filed by BAL Global Finance LLC; Banc of America Leasing and Capital LLC; Bank Midwest N.A.; El Camino Resources Ltd.; ePlus Group Inc.; General Electric Capital Corporation; Heller Financial Leasing Inc.; Huntington National Bank; John A. Porter, in his capacity as Chapter 7 Bankruptcy Trustee for Krista L. Kotlarz Watson, Bankruptcy Case

36

No. 04-15817; M&I Equipment Finance Company; National City Corporation; Solarcom

Capital LLC; Sterling Bank; TAGE Equipment Financial Services Corporation; Technology

Investment Partners LLC;[8] Thomas C. Richardson, in his capacity as the Chapter 7

Bankruptcy Trustee for CyberCo Holdings Inc., Bankruptcy Case No. 04-14905; U.S.

Bancorp Equipment Finance Inc.; and U.S. Bancorp/Oliver-Allen Technology Leasing will

be denied.  A final order of forfeiture will be entered in *United States v. Watson*, consistent

with this opinion.


Date:   ___March 31, 2008___          /s/ Robert Holmes Bell_____
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[8]Technology Investment Partners LLC ("TIP") filed its verified petition on February 4, 2008. (File No. 1:06-CR-290, Dkt. No. 128.)  The Court issued the preliminary order of forfeiture on September 24, 2007.  The government published notice of the preliminary order of forfeiture in the Grand Rapids Legal News on October 24, 2007.  (File No. 1:06-CR-290, Dkt. No. 88, Proof of Publication.)  The government's brief for the consolidated hearing indicates that the government also later published notice in the San Jose Record News and the New York Post.  (Gov't Br. re Consolidated Hr'g 8-9 n.5.)  Under 21 U.S.C. § 853(n)(2) the last day on which a party could file a petition was December 21, 2007.  TIP's contention that it was unaware of the published notices is unavailing as § 853(n) does not contain any exceptions for such circumstances.  Therefore, TIP's verified petition will be denied as untimely.

37